**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF MASSACHUSETTS**

**EASTERN DIVISION**

| | |
|---|---|
| In re<br><br>**SHARLENE GREER-ALLEN,**<br><br>Debtor<br><br>**SHARLENE GREER-ALLEN,**<br><br>Plaintiff<br><br>v.<br><br>**NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-1,**<br>**NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3, and**<br>**NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3,**<br><br>Defendants | Chapter 7<br>Case No. 17-12935-FJB<br><br><br><br><br><br>Adversary Proceeding<br>No. 17-1129 |

**MEMORANDUM OF DECISION**

I.   **INTRODUCTION**

Sharlene Greer-Allen ("Greer-Allen") entered into three loan agreements, subsequently assigned to the defendants, to help finance her education at Northeastern University. After receiving a discharge under Chapter 7 of the Bankruptcy Code ("the Code"), Greer-Allen commenced the present adversary proceeding, in which she seeks a determination that her discharge extinguished the aforementioned obligations. The defendants contend that 11 U.S.C. § 523(a)(8) excepts these loans from discharge. The parties have now filed competing motions for summary judgment. Because these student loans originated under a program funded by a nonprofit institution, § 523(a)(8)(A)(i) excepts these loans from

a Chapter 7 discharge. Accordingly, the defendants are entitled to summary judgment, and the Court will allow their motion and enter judgment accordingly.

## II.     JURISDICTION

This proceeding is one to determine the dischargeability, under § 523(a)(8) of the Bankruptcy Code, of Greer-Allen's student loan obligations.  It arises under the Bankruptcy Code and in a bankruptcy case and therefore falls within the jurisdiction given the district court in 28 U.S.C. § 1334(b).  By standing order of reference, the District Court has referred the matter to the bankruptcy court pursuant to 28 U.S.C. § 157(a). It is a core proceeding within the meaning of 28 U.S.C. § 157(b)(1) and (b)(2)(I) (core proceedings include determinations of the dischargeability of particular debts). The bankruptcy court accordingly has authority to enter final judgment on the complaint.  28 U.S.C. § 157(b)(1) (authorizing bankruptcy judge to enter appropriate orders and judgment as to core proceedings).

## III.    LEGAL STANDARDS

Summary judgment is warranted when "there is no genuine dispute as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Creating a genuine issue of material fact requires hard proof rather than spongy rhetoric." *Cowell v. Hale (In re Hale)*, 289 B.R. 788, 791 (1st Cir. BAP 2003) (citing *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991)). A court "must view the record in the light most favorable to the party opposing the motion, and must indulge all inferences favorable to that party." *Daury v. Smith*, 842 F.2d 9, 11 (1st Cir. 1988). To defeat a motion for summary judgment, the evidence presented must be sufficient to allow a reasonable factfinder to resolve an issue in favor of the nonmoving party. *See Hale*, 289 B.R. at 792.

In an action to determine the dischargeability of student loans, the lender bears the initial burden of showing "that the debt is of the type excepted from discharge under section 523(a)(8)." *Bronsdon v. Educ. Credit Mgmt. Corp. (In re Bronsdon)*, 435 B.R. 791, 796 (1st Cir. BAP 2010). Upon such a showing, the burden of production shifts to the debtor. The lender bears the ultimate burden of proof

2

by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 286 (1991). Although Congress plainly intended to except certain debts from discharge, the § 523(a) exceptions should be construed narrowly. *See In re Hyman*, 502 F.3d 61, 66 (2d Cir. 2007).

IV.     **FACTUAL AND PROCEDURAL HISTORY**

Beginning in 2004, Greer-Allen attended Northeastern University. Although she received financial aid in the form of both loans and grants, Greer-Allen sought out private loans in order to fully finance her education. Using a web portal maintained by First Marblehead Bank, Greer-Allen applied for and received three separate student loans. The first loan originated with Bank One, N.A. Bank One then merged with JPMorgan Chase Bank, N.A. Thus, the second and third loans originated with JP Morgan Chase, despite Greer-Allen applying for all three loans in the same manner. Each loan stated that it was made as part of the Education One Undergraduate Loan Program. Further, each loan agreement stated that "this loan is guaranteed by The Education Resources Institute, Inc. ("TERI"), a nonprofit institution."

The first loan agreement originated in 2004. Bank One loaned Greer-Allen $30,000 to help finance her attendance at Northeastern during the 2004-2005 school year. In 2004, the cost of attendance at Northeastern was $16,113. The first loan supplemented $8,034 in other forms of aid that Greer-Allen received for that academic year. Assuming that the $8,034 loan went towards educational expenses, the proceeds of the Bank One loan exceeded the cost of attendance by $21,921. Bank One subsequently assigned the first loan to defendant National Collegiate Student Loan Trust 2005-1.

Before the 2005-2006 academic year, Greer-Allen entered into a second loan agreement, this time with JPMorgan Chase Bank. While the second loan originated with JPMorgan Chase Bank, not with Bank One, the loan agreement contained identical terms. Greer-Allen received $30,000 in proceeds from the second loan, on the same terms as the first loan. That year, Greer-Allen again received $8,034 in other forms of aid, however, the cost of attendance at Northeastern had risen to $20,744. As a result, she received $17,290 in excess of the cost of attendance from the second loan proceeds. JPMorgan

Chase Bank subsequently assigned the second loan to defendant National Collegiate Student Loan Trust 2005-3.

Greer-Allen received $33,792 for the 2006-2007 academic year as proceeds from the third loan. Once again, Greer-Allen received $8,034 in other aid. Although Greer-Allen increased the principal of her third loan, the cost of attendance for 2006-2007 fell to $15,259. Thus, her loan proceeds exceeded the cost of attendance by $26,567. JPMorgan Chase Bank subsequently assigned the third loan to defendant National Collegiate Student Loan Trust 2006-3.

In 2017, Greer-Allen filed her petition for relief under Chapter 7 of the Bankruptcy Code. She scheduled the amounts owed under the loan agreements as follows: $62,022.66 owed to NCSLT 2005-1 for the first loan, $55,730.50 owed to NCSLT 2005-3 for the second, and $71,803.75 owed to NCSLT 2006-3 for the third. On November 7, 2017, this Court entered an order discharging all of Greer-Allen's properly scheduled debts, excluding those excepted from discharge under 11 U.S.C. § 523(a).

## V.    DISCUSSION

The issue before the Court is whether the November 7, 2017 discharge order extinguished Greer-Allen's obligation to repay the debts owed to NCSLTs 2005-1, 2005-3, and 2006-3. The answer depends on whether the three loans at issue fall within the categories of student debt that, in 11 U.S.C. § 523(a)(8), Congress excepted from discharge. Because the loans were made under a program funded in part by a nonprofit institution, § 523(a)(8)(A)(i) excepts the loans from discharge. Accordingly, the defendants are entitled to summary judgment.

A Chapter 7 discharge removes a debtor's obligation to repay a wide array of prepetition debts. 11 U.S.C. § 727(b). Despite the general breadth of a Chapter 7 discharge, Congress set out certain categories of non-dischargeable debts. *See generally* 11 U.S.C. § 523(a). Among the debts excepted from Chapter 7 discharge are four categories of student loan obligations. 11 U.S.C. § 523(a)(8). Subject to an

4

undue hardship exception not applicable here, the obligation to repay a debt falling within § 523(a)(8) survives the entry of a Chapter 7 discharge.

Section 523(a)(8) excepts four types of debt from discharge: first, educational loans (or benefit overpayments) made, insured, or guaranteed by a governmental unit, § 523(a)(8)(A)(i); second, educational loans (or benefit overpayments) "made under any program funded in whole or in part by a governmental unit or nonprofit institution," *id;* third, obligations "to repay funds received as an educational benefit, scholarship, or stipend," § 523(a)(8)(A)(ii); and fourth, qualified educational loans incurred by an individual, § 523(a)(8)(B). A loan falling within any of the four categories is non-dischargeable unless excepting it from discharge would impose an undue hardship on the debtor and the debtor's dependents.[1]

Greer-Allen contends that her student loans fall outside the scope of all four categories. Conversely, the defendants argue that the loans are excepted from discharge under the second, third, and fourth categories. The defendants acknowledge that the loans were not made, insured, or guaranteed by a governmental unit and therefore do not fall within the first category.

Section 523(a)(8) is written disjunctively, meaning that a loan must fall within just one of the four categories in order to be non-dischargeable. If, taking all reasonable inferences in Greer-Allen's favor, the defendants show that each loan falls within one of the non-dischargeable categories, then the defendants are entitled to summary judgment. On the other hand, Greer-Allen is entitled to summary judgment only if each loan falls outside the scope of all categories, despite taking all reasonable inferences in the defendants' favor. While the parties put forth numerous theories regarding the applicability of each of the three contested categories, the record and this Court's own docket show that all three loans fall within the second category. Each of the three educational loans was made under a program funded in part by a nonprofit institution. For that reason, the defendants are entitled to

---

[1] Greer-Allen does not contend that her debts fall within the undue hardship exception.

5

summary judgment. Because the determination that these loans are non-dischargeable under § 523(a)(8)(A)(i) is dispositive, the Court declines to reach the parties' arguments relating to the third and fourth categories (subsections 523(a)(8)(A)(ii) and 523(a)(8)(B), respectively).

In order for a debt to fall within the second category, three requirements must be satisfied. 11 U.S.C. § 523(a)(8)(A)(i); *Wiley v. Wells Fargo Bank, N.A. (In re Wiley)*, 579 B.R. 1, 6 (Bankr. D. Me. 2017). First, the debt must be for either an educational loan or an educational benefit overpayment. 11 U.S.C. § 523(a)(8)(A)(i). Courts look to the purpose of the loan in order to determine whether it is an educational loan. *In re Page*, 592 B.R. 334, 336 (8th Cir. BAP 2018) (citing *In re Murphy*, 282 F.3d 868 (5th Cir. 2002)). Second, the loans must have been made under a program.[2] *Wiley*, 579 B.R. at 6. Third, the program must have been funded, at least in part, by a governmental unit or a nonprofit institution. *Id*.

Importantly, it is the program, not the individual loan, that must have been funded by a governmental unit or nonprofit institution. *In re O'Brien*, 419 F.3d 104, 106 (2d Cir. 2005) ("While it may be true that TERI merely guaranteed, without funding, [debtor's] particular loan, it is an entirely different question whether TERI funded the loan program under which [debtor's] loan was made."); *Educ. Res. Inst., Inc. v. Taratuska (In re Taratuska)*, No. 07-11938-RCL, 2008 WL 4826279, at *3 (D. Mass. Aug. 25, 2008). "Congress intended to include within [section] 523(a)(8) all loans made under a program in which a nonprofit institution plays any meaningful part in providing funds." *Educ. Res. Inst., Inc. v. Hammarstrom (In re Hammarstrom)*, 95 B.R. 160, 165 (Bankr. N.D. Cal. 1989). A nonprofit institution's guarantee of a loan made under a program serves as evidence that the program was funded by that nonprofit institution. *See Taratuska*, 2008 WL 4826279, at *6. This is because the existence of a guarantee plays a meaningful part in a program's ability to extend credit to student borrowers. *See id*.

### A. These are Educational Loans Because Greer-Allen Entered Them to Fund Her Studies at Northeastern University

---

[2] The term "program" is not defined by the Code. While scores of published opinions discuss 523(a)(8) dischargeability, the Court is unaware of any case defining the parameters of a "program."

Greer-Allen's loans satisfy all three requirements of the second prong of § 523(a)(8)(A)(i). The three loans are educational loans because Greer-Allen entered into them to finance her studies at Northeastern University. Greer-Allen admits that she sought out the loans for this educational purpose.[3] The loan agreements and Greer-Allen's admissions show that she entered these loans to help fund her education. For this reason, these loans qualify as educational loans under § 523(a)(8)(A)(i), notwithstanding that Greer-Allen spent some of their proceeds for non-educational purposes.

B. **Bank One and JPMorgan Chase Bank Issued the Loans as Part of the Education One Undergraduate Loan Program.**

All three loans were made under the Education One Undergraduate Loan Program. Greer-Allen applied for each loan through a website maintained by First Marblehead Bank. While Bank One originated the first loan and JPMorgan Chase Bank originated both subsequent loans, all three loan agreements conspicuously state that they were made under the Education One Undergraduate Loan Program. Further, the defendants submitted the affidavit of Bradley Luke, an employee of Transworld Systems, Inc. ("TSI"). Def.'s Mot. Summ. J. Ex. C. TSI is responsible for subservicing student loans held by the defendants. Luke testified that all three loans were made under a loan program. Luke Aff. ¶ 16, 23, 31. Greer-Allen has submitted no evidence calling into question the existence of the loan program. Thus, even taking all reasonable inferences in Greer-Allen's favor, the defendants have shown that these loans were made under a program.

C. **TERI is a Nonprofit Institution, and it Funded the Education One Program by Guaranteeing All Loans Issued Under the Program**

The third requirement is satisfied because the Education One Undergraduate Loan Program was funded in part by TERI, a nonprofit institution. This determination requires the Court to answer two

---

[3] Despite seeking the loans for an educational purpose, the parties suggest that Greer-Allen used some portion of the loan proceeds to purchase a home. At oral argument, Greer-Allen's counsel suggested that the use of loan proceeds for non-educational purchases forecloses their consideration as educational loans. However, "courts routinely look to the purpose of a loan to determine whether it is 'educational.'" *In re Page*, 592 B.R. at 336. This Court finds the reasoning of *In re Page* persuasive and looks to the purpose for which the loans were entered in order to determine whether the loans are educational in nature.

questions affirmatively. First, was TERI a nonprofit institution? And second, did TERI fund, at least in part, the Education One Undergraduate Loan Program? The defendants have satisfied their burden of production on both questions; and Greer-Allen has not submitted evidence, beyond mere speculation, refuting TERI's nonprofit status or TERI's funding of the program.

### 1.    TERI was a Nonprofit Institution

Ample evidence in the record shows that TERI was a nonprofit entity. All three loan agreements reference TERI's status as a nonprofit institution. All three trust agreements submitted by the defendants define TERI as "a private non-profit corporation organized under Chapter 180 of the Massachusetts General Laws." Def.'s Mot Summ. J. Ex. F, G, H. Further, the Guaranty Agreement, submitted under seal, between TERI and Bank One, N.A. also describes TERI as "a private non-profit corporation organized under Chapter 180 of the Massachusetts General Laws."

At oral argument, Greer-Allen's counsel insinuated that TERI may not have been operating as a nonprofit institution when these loans originated. However, Greer-Allen has not produced any evidence in furtherance of that claim. Summary judgment is appropriate where there is no genuine issue of material fact. Here, Greer-Allen has not put forth sufficient evidence to generate a genuine issue of material fact regarding TERI's nonprofit status.

Greer-Allen's counsel also argues that Congress understood "nonprofit institution," as the phrase is used in § 523(a)(8)(A)(i), to mean only nonprofit educational institutions. In other words, Greer-Allen contends that only educational loans made under a program funded by a nonprofit college should be excepted from discharge. Whether or not Congress intended such a meaning, this Court must give effect to the plain language Congress used. Section 523(a)(8)(A)(i) excepts loans made under programs funded by "nonprofit institutions" from discharge. The plain text is unambiguous and offers no reason to suggest that only certain nonprofit institutions satisfy the exception. Accordingly, the Court declines to adopt Greer-Allen's reading of § 523(a)(8)(A)(i).

### 2. TERI Funded the Education One Program by Guaranteeing All Education One Loans

The final issue the Court must decide is whether TERI funded the Education One Undergraduate Loan Program. The defendants put forth evidence suggesting that TERI did fund the program. Greer-Allen argues that the evidence the defendants produced cannot satisfy their burden of production. The Court finds that the defendants have satisfied their initial burden of production. On the other hand, Greer-Allen has provided no evidentiary basis for her assertion that TERI did not fund the program. Greer-Allen has not shown a genuine issue of material fact relating to the issue.

The defendants produced the loan documents for each of the three loans. The first loan states:

> I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523(a)(8) of the United States Bankruptcy Code. Specifically, I understand that [Bank One, N.A.] purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc., a nonprofit institution.

The second loan contains identical language, and the third loan contains substantially similar language. The language in the loan documents provide some evidence that the program was funded by TERI because they indicate that Bank One and JPMorgan Chase purchased guarantees from TERI. A guaranty helps fund a program because it encourages a lender to extend credit that may not otherwise be available. However, the language in the loan documents is not, standing alone, sufficient to prove the existence of the guarantees. Another court in this circuit has denied summary judgment when a creditor sought to prove the existence of a guaranty based only upon similar language in a promissory note. *See In re Wiley*, 579 B.R. at 7. Here, the defendants have produced substantially more evidence, including the relevant guaranty and the defendants' trust agreements.

The summary judgment record also contains the trust agreement of each defendant. These agreements provide further evidence of the existence of the TERI guaranty agreement and TERI's funding of the Education One Program. The agreements define "TERI Guaranty Agreements" as the

9

"Guaranty Agreements entered into between each of the Loan Originators and TERI as set forth on Schedule D attached hereto." The trust agreements define "TERI Guaranteed Loans" as "Student Loans originated under the Student Loan Programs owned by the Trust and guaranteed by TERI pursuant to the Guaranty Agreements." Schedule D of each trust agreement lists a Guaranty Agreement between TERI and Bank One, N.A. "for loans that were originated under Bank One's . . . Education One Loan Program." (ECF #29 Ex. F, G, H).

The trust agreements and their attached schedules indicate that the Education One Loan Program was funded by TERI. Each agreement lists the Program as one guaranteed by TERI. Each defines loans made under the Program as TERI Guaranteed Loans. The trust agreements bolster the notion that TERI played a part in funding the Program by guaranteeing loans issued under the Program.

Most notably, the defendants produced a guaranty agreement, executed on April 18, 2002, between Bank One and TERI. Under the agreement, TERI promised to guaranty all loans made under the Education One Undergraduate Loan Program. Section 2.1 of the guaranty states that "TERI hereby guarantees to Bank One, unconditionally . . . the payment of 100% of the principal of and accrued interest on every Loan as to which a Guaranty Event has occurred." Loans are defined as disbursements of funds made by Bank One under the Program. Guaranty Events are triggered by the failure of a borrower to make timely monthly payments. Thus, the agreement makes clear that TERI guaranteed all loans made under the Program, and that TERI was obligated to pay Bank One in the event of any default by a student loan borrower. The sweeping breadth of the guaranty makes clear that TERI helped fund the Program. Bank One and JPMorgan Chase Bank, its successor in interest, knew that all loans issued under the Program would be guaranteed by TERI in the event of default.

Considering the guaranty between Bank One and TERI, along with the aforementioned evidence, the defendants have met their initial burden of production. While the record lacks direct evidence of payments from TERI to the program, TERI's guaranty of all loans made under the Program conclusively

establishes that the Program was funded in part by TERI. The blanket guaranty allowed Bank One, and its successor JPMorgan Chase, to offer student loans to borrowers like Greer-Allen.

## VI.    CONCLUSION

The evidence presented shows that there are no genuine issues of material fact in this adversary proceeding. The defendants demonstrated that Greer-Allen's loans are educational loans made under the Education One Loan Program. Further, they showed that the Education One Loan Program was funded by TERI, and that TERI was a nonprofit institution. Greer-Allen has failed to produce evidence that would create a genuine issue as to any one of these facts. At the summary judgment stage, the Court must make reasonable inferences in the nonmoving party's favor. Here, however, Greer-Allen has not produced evidence that would allow a reasonable factfinder to return a verdict in her favor. Accordingly, the three student loans at issue are non-dischargeable under 11 U.S.C. § 523(a)(8)(A)(i). For the aforementioned reasons, the defendants' motion for summary judgment is GRANTED and Greer-Allen's motion for summary judgment is DENIED.  Judgment shall enter accordingly.

Date:  July 29, 2019

_____
Frank J. Bailey
United States Bankruptcy Judge